# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

**DRAHCIR S. PARSON,**

                  **Plaintiff,**

v.
                                                **9:14-CV-1267 (BKS/CFH)**

**INSPECTOR BARBOZA,** *Warren County Jail* **and
CAPTAIN MIKE GATES,**

                  **Defendants.**

---

**Appearances:**

**Drahcir S. Parson**
Schenectady, NY 12303
Plaintiff, pro se

**Gregg T. Johnson, Esq.**
**April J. Laws, Esq.**
Lemire, Johnson & Higgins LLC
P.O. Box 2485
2534 Route 9
Malta, NY 12020
Attorney for Defendants

**Hon. Brenda K. Sannes, U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff pro se Drahcir Parson brought this action against defendants Inspector Barboza and Captain Mike Gates under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was a pretrial detainee at the Warren County Jail. Dkt. No. 18. On December 18, 2015,

Defendants filed a motion for summary judgment seeking dismissal of the complaint. Dkt. No. 27. Plaintiff did not respond to Defendants' motion. This matter was referred to United States Magistrate Judge Christian F. Hummel who, on June 28, 2016, issued a Report-Recommendation and Order recommending that Defendants' motion be granted in part and denied in part. Dkt. No. 37. Magistrate Judge Hummel recommended that Defendant's motion for summary judgment be granted as to all of Plaintiff's claims against defendant Gates; denied as to Plaintiff's excessive force claim against Barboza; and denied in all other respects. Dkt. No. 37 at 31. Magistrate Judge Hummel advised the parties that under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. Dkt. No. 37, p. 31.

Defendant Barboza has filed objections to the Report-Recommendation. Dkt. No. 41. Plaintiff has not filed objections or responded to the Defendant's objections. For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

## II. Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); N.D.N.Y. L.R. 72.1(c). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Petersen*, 2 F. Supp. 3d at 228-29; Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

Summary judgment may be granted only if all the submissions taken together "show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a summary judgment motion, the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

### III. Discussion

Defendant Barboza objects to the recommendation that the motion for summary judgment be denied as to the excessive force claim against her. Dkt. No. 41, p. 5. The excessive force claim is based upon Defendant Barboza's attempt to handcuff Plaintiff outside of his cell on the afternoon of August 12, 2014, before transporting him to Administrative Segregation. In the verified complaint Plaintiff asserts that Defendant Barboza "slammed me to the ground from behind and then grabbed my right finger to break it as she began handcuffing me." Dkt. No. 18, p. 3. Defendant Barboza disputes this account. *See* Dkt. No. 37, pp. 13-14 (setting forth the conflicting versions of the events).

Defendant argues that the "undisputed video evidence before the Court clearly shows Barboza handcuffing Plaintiff by turning him to [sic] floor so his hands and knees were on the floor in order to handcuff him without affording Plaintiff the opportunity to turn and confront her

3

. . . [and that] [a]s soon as Plaintiff was handcuffed – and stopped resisting – no further force was used." Dkt. No. 41, p. 10.  Defendant further argues that there is no evidence Barboza acted "maliciously and sadistically to cause harm" to Plaintiff.  Dkt. No. 41, p. 10, 13 (quoting *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993)).  However, the subjective standard on which Defendant relies – requiring a showing that the defendant acted maliciously and sadistically -- is not applicable to pretrial detainees such as Plaintiff.  *See Kingsley, v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473 (2015).  As Magistrate Judge Hummel noted, in order to establish an excessive force claim, Plaintiff must show "only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley*, 135 S. Ct. at 2473; *see, e.g., Roberts v. C-73 Medical Director*, No. 1:14-cv-5198-GHW, 2015 WL 4253796, *3 n.3, 2015 U.S. Dist. LEXIS 91072, at *8 n.3 (S.D.N.Y. July 13, 2015).[1]  Defendant argues that the video shows that "Barboza used reasonable force."  Dkt. No. 41, p. 11-12.  The Court has reviewed the video from the three different surveillance cameras, and agrees with Magistrate Judge Hummel that the video evidence does not "so utterly discredit" Plaintiff's version such that no reasonable juror could fail to believe defendant Barboza.  Dkt. No. 37, p. 15 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007)).

Finally, because there is a factual dispute regarding whether Defendant Barboza's use of force was objectively unreasonable, she is not entitled to qualified immunity at this stage of the proceedings.  *See Stephenson v. Doe,* 332 F.3d 68, 77 (2d Cir. 2003).  For the reasons detailed by Magistrate Judge Hummel, defendant Barboza is not entitled to summary judgment on her

---

[1] Copies of unpublished decisions are appended to this Decision for the convenience of the pro se Plaintiff.

qualified immunity defense. Dkt. No. 37, pp. 29-30. Therefore, following de novo review, the Court rejects Defendant Barboza's objections to the Report-Recommendation.

The Defendants have not objected to the remaining portion of the Report-Recommendation. Dkt. No. 41, p. 5. The Court has reviewed the remaining portion for clear error and found none. Accordingly, the Report-Recommendation is adopted in its entirety for the reasons stated therein.

### IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 37) is **ADOPTED** in all respects; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 27) is (1) **GRANTED** as to all of Plaintiff's claims against Defendant Gates, (2) **DENIED** as to Plaintiff's excessive force claim against Defendant Barboza and (3) **DENIED** in all other respects; and it is further

**ORDERED** that Defendant Gates is **DISMISSED** as a defendant to this action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated: August 18, 2016

Brenda K. Sannes
U.S. District Judge

2015 WL 4253796
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Keno ROBERTS, Plaintiff,
v.
C–73 MEDICAL DIRECTOR, et al., Defendants.

No. 1:14–cv–5198–GHW.
|
Signed July 13, 2015.

*MEMORANDUM OPINION AND ORDER*

GREGORY H. WOODS, District Judge.

**I. INTRODUCTION**

***1** Plaintiff, appearing *pro se,* filed this case on July 7, 2014 under 42 U.S.C. § 1983, alleging, as relevant here, that he received constitutionally inadequate medical care while incarcerated on Rikers Island. *See* Dkt. No. 1. He sued various persons and entities, including Dr. Kara Greenwald, who treated him for approximately 10 days at Bellevue Hospital. On January 16, 2015, Dr. Greenwald filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. *See* Dkt. Nos. 34–37.

Pursuant to a December 17, 2014 scheduling order, and as discussed during a telephone conference with all parties earlier that day, plaintiff's opposition to Dr. Greenwald's motion to dismiss was due February 16, 2015. *See* Dkt. No. 28. Plaintiff did not file an opposition or otherwise respond to Dr. Greenwald's motion by the February 16, 2015 deadline. On May 28, 2015, still having received no response, the Court issued an order notifying plaintiff that if he did not respond to Dr. Greenwald's motion by June 18, 2015—four months after the original due date—the Court would decide the motion without his opposition. *See* Dkt. No. 42. On June 24, 2015, the Court received a letter from plaintiff dated June 12, 2015, responding to other issues raised in the Court's May 28, 2015 order. *See* Dkt. No. 45. As plaintiff did not respond to or otherwise address Dr. Greenwald's motion in that letter, the Court has decided the motion without plaintiff's input. For the reasons outlined below, defendant Dr. Greenwald's motion to dismiss the complaint is GRANTED. Plaintiff is granted leave to file an amended complaint within 30 days.

**II. BACKGROUND**

Plaintiff brings two claims: one alleging denial of adequate medical care and one alleging excessive force. The latter is not relevant to the current motion because it does not involve Dr. Greenwald. As to the former, plaintiff first alleges that he was wrongfully prescribed the medication Simvastatin, which caused him to develop Type 2 Diabetes. *See* Compl., Dkt. No. 1, at 4; Brief, Dkt. No. 1–1, at 4–5.[1] After taking Simvastatin as prescribed, on February 8, 2013, plaintiff alleges he "almost died when his blood sugar levels escalated causing plaintiff to go into shock, whereas, he was immediately rushed to Elmhurst General Hospital near death." Brief at 3; *see also* Compl. at 4. "From Elmhurst General plaintiff was rushed to Bellevue Hospital because the sugar level continued to go out of control[ ]...." Brief at 4.

[1] "Compl." refers to the Civil Rights Complaint form plaintiff filed; "Brief" refers to plaintiff's typed submission attached to the form, formatted like a standard complaint. Together, both documents form plaintiff's original complaint. The Court distinguishes between the two documents in citations only for the sake of clarity.

It was at Bellevue Hospital that plaintiff was placed under Dr. Greenwald's care. *See* Brief at 6. She treated him from February 13 through 23, 2013. *See id.* Plaintiff alleges that Dr. Greenwald "failed to provide plaintiff with adequate medical care and treatment, as well as grossly failed to prescribe adequate medications, because of such, plaintiffs medical conditions as well as the blood sugar levels could not be stabilized ...." *Id.* Plaintiff further alleges that he requested to see a specialist[2] but that Dr. Greenwald denied this request until a point when his physical condition had worsened. *See* Brief at 6, 7. Once he saw the specialist, plaintiff says he was prescribed medication and given dietary instructions. *See* Brief at 7. Despite being scheduled to see the specialist "on a regular basis," plaintiff alleges that Dr. Greenwald still "failed to prescribe any kind of medication for plaintiff that could control his blood sugar levels, [and] because of such, plaintiff's blood sugar level became so out of control[ ] that it got erratic, and thereafter, was never stabilized." *Id.*

| 2 | Plaintiff uses the terms "endrochronotogist" and "endrochonologist" in his complaint form and attached brief to refer to the type of specialist he saw and/or requested. Because the type of specialist is not important to deciding the current motion, the Court assumes the two terms refer to the same type of doctor, which the Court simply refers to as a "specialist." |
|---|---|

 *2 Upon his discharge from Bellevue, plaintiff was treated at the North Infirmary Command ("NIC") for three days, where he alleges the staff "failed to provide him with insulin, medication(s) and the appropriate diet." Brief at 5, 7. Plaintiff claims that at Bellevue, as well as at Rikers, Elmhurst, and the NIC, "defendants ... failed grossly to provide plaintiff with not only adequate medical care and treatment; but failed to provide him with adequate medication and an adequate diet sufficient enough to meet hi[s] medical needs, that being sugar diabetes." Brief at 13.

Plaintiff alleges that he has suffered serious and long-lasting effects from the allegedly inadequate medical care he received. *See, e.g.,* Compl. at 5 (defendants' actions "[caused] irreparable injury and lif[e] long medical treatment, care and medication to keep his now diabetes under control"); Brief at 5 ("Since plaintiff was diagnosed with type two diabetes, his medical conditions continue[ ] to increas[e], get worse, and pose a direct and immediate threat to plaintiffs life, [and] mental state of being...."); Brief at 6 ("As a result of defendants individual[ ] and or collective actions, plaintiff is still to date ... living with irreparable injury, harm, pain and suffering as a result of having [ ] type 2 diabetes ...."). Plaintiff alleges that Dr. Greenwald's actions were a cause of these effects:

> Because of inadequate medical care and treatment, plaintiff continued to experience other diabetes or diabetic problems, that defendant Greenwald failed to treat, as well as her medical team failed to treat, because of such, plaintiffs medical conditions continued to get worse, and worse, his pain got greater and greater, and both [went] untreated. This caused plaintiff prolong [ed] pain, suffering, and continuing health problems ....

Brief at 7.

### III. LEGAL STANDARDS

#### a. Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the nonmoving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir.2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s][are] liable for the misconduct alleged." *Id.*

 *3 Because he is proceeding *pro se,* the Court must liberally construe plaintiff's submissions and "interpret[ ] [them] to raise the strongest arguments that they *suggest." Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis in original); *see also, e.g., Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed ...."). "This admonition 'applies with particular force when a plaintiff's civil rights are at issue.' " *Bell v. Jendell,* 980 F.Supp.2d 555, 558 (S.D.N.Y.2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.,* 640 F.Supp.2d 345, 348 (S.D.N.Y.2009)).

#### b. Section 1983 Claim for Inadequate Medical Care While Incarcerated

To prevail on a claim brought under 42 U.S.C. § 1983, plaintiff must show that Dr. Greenwald "acted under color of state law and that she deprived him of a right secured by the Constitution or laws of the

United States." *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004) (citing *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Because plaintiff is a pretrial detainee in state custody, he "receives protection against mistreatment at the hands of prison officials under ... the Due Process Clause of the Fourteenth Amendment," rather than the Eighth Amendment, which is applicable only to convicted prisoners. *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009).

Plaintiff alleges that Dr. Greenwald and various other defendants denied him constitutionally adequate medical care. In the Second Circuit, courts analyze such claims "under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72. "In order to establish an Eighth [or Fourteenth] Amendment claim arising out of inadequate medical care, a prisoner [or pretrial detainee] must prove 'deliberate indifference to his serious medical needs.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)) (internal alteration omitted). This standard has an objective and a subjective prong:[3] "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id.* (internal citation omitted). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see also Caizzo,* 581 F.3d at 6566.

[3]   In its recent decision in *Kingsley v. Hendrickson,* the Supreme Court held that a pretrial detainee bringing a claim for excessive force under the Fourteenth Amendment must meet an *objective* standard by showing "only that the force purposely or knowingly used against him was objectively unreasonable." No. 14–6368, 2015 WL 2473447, at *5 (U.S. June 22, 2015) (abrogating *Murray v. Johnson No. 260,* 367 F. App'x 196, 198 (2d Cir.2010)). In contrast, a convicted prisoner bringing a claim for excessive force under the Eighth Amendment must meet a *subjective* standard by showing that the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992). The decision in *Kingsley* dealt only with excessive force claims, thus the Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs, which is identical to the standard for convicted prisoners under the Eighth Amendment. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009). In *Arroyo v. Schaefer,* the Second Circuit noted that due process does not require more than the Eighth Amendment. 548 F.2d 47, 50 (2d Cir.1977). That premise did not change in this context-the Eighth Amendment still requires intent; the Fourteenth Amendment requires no more. The Fourteenth Amendment standard here only changes if the Supreme Court changes the Eighth Amendment floor.

## IV. ANALYSIS

**a. Objective Prong: Sufficiently Serious Deprivation**
"[G]iven the fact-specific nature of Eighth Amendment denial of medical care claims, it is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific." *Smith v. Carpenter,* 316 F.3d 178, 187 (2d Cir.2003). Thus, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003). In assessing seriousness, courts take into account factors such as: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal alteration omitted). "A serious medical need is generally characterized by 'a condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Ferguson v. Cai,* No. 11–cv–6181 (PAE), 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) (quoting *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005)).

*4 "[I]f the unreasonable medical care is a failure to provide *any* treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (emphasis added). But where an inmate alleges "an unreasonable delay or interruption in ... treatment, the seriousness inquiry

focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith,* 316 F.3d at 185). Courts have found that diabetes is a sufficiently serious medical condition. *See, e.g., Colon v. Cnty. of Nassau,* No. 12–cv–4466 (JS)(SIL), 2014 WL 4904692, at *6 (E.D.N.Y. Sept. 26, 2014); *Beatty v. Davidson,* 713 F.Supp.2d 167, 174 (W.D.N.Y.2010) (collecting cases). However, because plaintiff alleges that Dr. Greenwald unreasonably delayed his treatment for diabetes, the Court focuses on "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition[ ] considered in the abstract." *Smith,* 316 F.3d at 186.

"[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.' " *Bell v. Jendell,* 980 F.Supp.2d 555, 559–60 (S.D.N.Y.2013) (quoting *Smith,* 316 F.3d at 186)). Because plaintiff alleges that he saw a specialist and received medication at some point during his stay at Bellevue, the alleged delay in Dr. Greenwald's care was necessarily less than his full 10–day stay. *See* Brief at 7. In cases involving less-serious medical conditions and consequences of the delay, courts in this district have found similarly short delays were insufficiently serious. *See, e.g., Patterson v. Westchester Cnty.,* No. 13–cv–0194 (PAC)(AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) *report and recommendation adopted,* 2014 WL 2759072 (S.D.N.Y. June 16, 2014) (3–day "delay in taking and reporting the results of an x-ray that revealed torn ankle ligaments does not constitute a sufficiently serious treatment delay"); *Hamm v. Hatcher,* No. 05–cv–503 (ER), 2013 WL 71770, at *9 (S.D.N.Y. Jan. 7, 2013) (10–day delay in receiving prescribed antidepressant medications was insufficient where only adverse medical consequence was withdrawal symptoms).

"Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Ferguson v. Cai,* No. 11–cv–6181 (PAE), 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (collecting cases); *see also Bell,* 980 F.Supp.2d at 560 (5–day delay in care was sufficiently serious where plaintiff alleged that he suffered serious symptoms—including vomiting while sleeping—as a result of the delay).

**\*5** Plaintiff alleges that he "was rushed to Bellevue Hospital" from Elmhurst "because the sugar level continued to go out of control[ ] placing plaintiff's life on a notice[.]" Brief at 4. He claims that for at least part of the 10 days he was at Bellevue, Dr. Greenwald "failed to prescribe adequate medications" and denied him access to a specialist. *See* Brief at 6–7. He alleges that these delays resulted in his blood sugar level becoming "so out of control[ ] that it got erratic, and thereafter, was never stabilized ." Brief at 7. He also alleges that as a result, his "medical conditions continued to get worse, and worse, his pain got greater and greater, and both [went] untreated," which caused him "prolong[ed] pain, suffering, and continuing health problems." Brief at 7. Plaintiff claims that Dr. Greenwald's alleged delay in care caused him "great[ ]" pain and exacerbated his diabetes.

Although the alleged delay was short, construing this *pro se* plaintiff's claims liberally, as the Court must, and mindful that at the motion to dismiss stage the Court must accept plaintiff's allegations as true, the Court finds that the plaintiff has alleged a sufficiently serious medical need that was not addressed by Dr. Greenwald to meet the objective prong of the Fourteenth Amendment analysis.[4]

4   The Court notes that "[a]lthough adverse medical effects are not required to prove a constitutional violation, ... in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Hamm v. Hatcher,* No. 05–cv–503 (ER), 2013 WL 71770, at *8 (S.D.N.Y. Jan. 7, 2013) (quoting *Smith,* 316 F.3d at 187, 188). Thus, as the Second Circuit has recognized, "the 'seriousness' determination in Eighth Amendment denial of medical care cases will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition." *Smith,* 316 F.3d at 188, n. 14 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)) (internal alteration omitted).

**b. Subjective Prong: Sufficiently Culpable State of Mind**

Plaintiff must also plausibly allege that Dr. Greenwald "knew of and disregarded an excessive risk to [his] health or safety and that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)) (internal alterations omitted). This requires "something more than mere negligence." *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). Plaintiff must allege facts which, if true, would show that Dr. Greenwald acted with "a state of mind 'equivalent to the familiar standard of 'recklessness' as used in criminal law.' " *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003) (quoting *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (per curiam)). "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness." *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.2011).

Plaintiff alleges that he was "rushed" to Bellevue with "out of control" blood sugar levels. Brief at 4. He alleges that he continually requested to see a specialist but that Dr. Greenwald denied his requests. Brief at 6. He alleges that "[i]t was only when plaintiff's physical conditions continued to get worse, did defendant Greenwald's conditions with regards to treating plaintiff change, defendant then ordered that plaintiff be examined by a specialist, that he had been requesting, but denied. After plaintiff was finally examined by a specialist, medication was prescribed along with a dietary instructions and orders." Brief at 7.

**\*6** But "[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 311–12 (S.D.N.Y.2001) (citing *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998)); *see also Brown v. McElroy,* 160 F.Supp.2d 699, 706 (S.D.N.Y.2001) ("[T]he fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim."). "Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.2011) (citing *Hernandez v. Keane,* 341 F.3d 137, 146–48 (2d Cir.2003)). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs.,* 198 F.3d 233 (2d Cir.1999) (table) (citations omitted).

Plaintiff does not allege facts sufficient to show that Dr. Greenwald acted with deliberate indifference. The circumstances surrounding his admission to Bellevue and his alleged physical condition at the time may support an inference that a serious risk of harm existed, but plaintiff must also allege facts which, if true, would show that Dr. Greenwald in fact drew that inference and then consciously disregarded it. He has not done so. In fact, plaintiff acknowledges that when he condition worsened, Dr. Greenwald referred him to a specialist, which does not support a contention that she acted with deliberate indifference. "Bereft of any allegations of ulterior motive or culpable recklessness, the [complaint] asks the Court to examine the reasonableness *per se* of the doctor's decision .... This analysis would necessarily require a detour from what is cognizable under Section 1983 into what is squarely within the purview of a negligence or medical malpractice claim." *Washington v. Westchester Cnty. Dep't of Correction,* No. 13–cv–5322 (KPF), 2015 WL 408941, at \*9 (S.D.N.Y. Jan. 30, 2015)).

The Court finds that the plaintiff has failed to allege that Dr. Greenwald acted with the requisite deliberate indifference to meet the subjective prong of the Fourteenth Amendment analysis.

### V. CONCLUSION

For the reasons outlined above, Dr. Greenwald's motion to dismiss plaintiff's complaint against her is GRANTED without prejudice. Plaintiff is granted leave to file an amended complaint within 30 days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Docket Number 35.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4253796

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.